NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0649n.06

No. 12-4172

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 12, 2013
DEBORAH S. HUNT, Clerk

MIMI L. LEE; RICHARD D. LEE,                )
                                            )
    Plaintiffs-Appellants,                  )
                                            )
            v.                              )
                                            )
CITY OF NORWALK, OHIO; JAMES L.             )
MONTANA, Individually and in his official capacity )
as a Norwalk Police Officer; CHRISTOPHER HIPP, )
Individually and in his official capacity as a Norwalk )
Police Officer; THOMAS COOK, Sergeant,      )
Individually and in his official capacity as a Norwalk )
Police Officer; DAVID LIGHT, Individually and in )
his official capacity as Chief of the Norwalk Police )
Department; JOHN DOE, No. 1,                )
                                            )
    Defendants-Appellees.                   )
                                            )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: ROGERS and KETHLEDGE, Circuit Judges, and BORMAN, District Judge.[*]

ROGERS, Circuit Judge. Mimi and Richard Lee filed this action under 42 U.S.C. § 1983, alleging that Norwalk, Ohio police officers used excessive force in violation of Lee's Fourth Amendment rights by applying handcuffs to Mimi Lee too tightly for a prolonged period of time, and by physically assaulting Lee and slamming her to the ground during the booking process at the police station. The district court granted summary judgment for the officers on the basis of qualified

_____

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

immunity. Because plaintiffs do not raise a genuine issue of material fact to show that any officer used excessive force in violation of Lee's constitutional rights, or that a reasonable officer would have known that the conduct at issue was unlawful, the district court properly granted summary judgment for defendants.

On May 7, 2009, Norwalk police officer James Montana responded to a call alerting the police that a woman was seen urinating in a hospital parking lot. The hospital nurse who placed the call informed Officer Montana that the woman was driving out of the parking lot in a pickup truck. R. 26-2 at 2. Officer Montana followed the woman, Mimi Lee, across the street into a Burger King parking lot, and conducted a traffic stop there. At that point, Officer Christan Hipp arrived to assist Officer Montana. Lee admitted that she had urinated in the parking lot but offered the explanation that she was on medication that made it difficult for her to control her bladder. *Id.* Officer Montana smelled alcohol on Lee's breath and observed that her eyes were glassy and bloodshot. Suspecting that Lee was inebriated, Officer Montana asked Lee to perform field sobriety tests. Officer Montana conducted a horizontal gaze nystagmus test and found that Lee exhibited multiple signs of impairment. *Id.* Officer Montana then asked Lee to take a portable breath test, and Lee registered a 0.185 percent blood alcohol content, which is more than twice the legal limit in Ohio. *Id.* Officer Montana arrested Lee and handcuffed her.

The two officers observed cans of beer—one opened and several unopened—in Lee's truck. Lee was placed in Officer Montana's cruiser to be driven to the police station for booking. *Id.* Lee alleges that en route to the police station, she complained to Officers Montana and Hipp that the

handcuffs were too tight. R. 30-2 at 2. Lee claims that the allegedly too-tight handcuffing caused her injury requiring medical treatment. *Id.* at 3.

Lee also claims that after she arrived at the police station, the officers removed her handcuffs and sat her down in a chair. Lee alleges that while Officer Montana prepared the arrest paperwork, she continued complaining about swelling and red marks on her wrists. She became agitated and threw a paper on the ground. When she asked to use the bathroom, she was denied permission. R. 30-2 at 2. Lee claims that she then rose to move towards the door, which was blocked by Officer Hipp. As she moved towards Officer Hipp, Lee says he pushed her and Officer Montana grabbed her from behind. Lee alleges that Officer Montana grabbed her arms and pulled her to the left, then swung her around to face him and shoved her onto a table, put his right arm across her neck and choked her while maintaining a firm grip on her shoulder with his other hand. Lee claims that she did not resist and that Officer Montana continued to choke her with his arm across her neck for about thirteen seconds. Officer Thomas Cook allegedly checked on Montana's choke hold but did not intervene to stop it. R. 30-2 at 2.

Lee claims that Officer Montana pulled her up into a sitting position and then onto her feet, and then threw her to the booking room floor, causing Lee to hit her head on the ground. She alleges that Officer Montana then straddled her and continued to choke her with his forearm across her neck. Officer Montana allegedly shouted, "Spray the bitch," which prompted Officer Hipp to reach for his pepper spray—though Lee does not claim to have been pepper sprayed. R. 30-2 at 2. Officers Hipp and Cook then allegedly helped Officer Montana roll her onto her stomach and handcuff her behind

her back while Officer Timothy Skinner came in to assist them by holding Lee's ankles. Lee alleges that she was then allowed to sit on a chair in the booking room once again and that the booking process was completed without further incident.

Lee claims that she suffered injury to her wrists as a result of the handcuffing, which required her to undergo medical treatment. After being released from police custody, she apparently went to the emergency room complaining of wrist pain and other injuries, and was diagnosed with a wrist contusion. She received medication and a wrist splint, and eventually, after consultation with an orthopedic surgeon, underwent carpal tunnel release surgery in both wrists. R. 1 at 6; R. 30-2 at 3.

The Lees subsequently filed this suit under § 1983, alleging that Lee's constitutional rights were violated by the officers' use of excessive force, and further raising state-law claims for assault and battery and intentional infliction of emotional distress. Plaintiffs also raised municipal liability claims against the City of Norwalk. *See* Complaint, R. 1 at 7–11. The defendants moved to dismiss the state-law claims on the grounds that those claims were barred by a one-year Ohio statute of limitations, and the district court granted that motion. The defendants then moved for summary judgment on the remaining claims. The district court found each officer entitled to qualified immunity and granted summary judgment for the officers on all claims. *Lee v. City of Norwalk*, No. 3:11-CV-897, 2012 U.S. Dist. LEXIS 123631 (N.D. Ohio Aug. 30, 2012).

On the handcuffing claim, the district court held that Lee could not prove that her wrist injuries resulted from the allegedly too-tight handcuffing rather than her own actions. The district court also held that the Fourth Amendment prohibits unduly tight or excessively forceful

handcuffing, but that even assuming Lee complained to the arresting officers and the officers failed to respond, the officers' failure to address the issue during the less-than-ten-minute ride to the police station did not constitute excessive force. *Id.* at *16–17. The district court concluded that Sixth Circuit precedent effectively foreclosed the notion that Lee's constitutional rights could have been violated in so short a period, and held that the officers were therefore entitled to qualified immunity. *Id.* at *18.

On the police-station-assault claims, the district court noted that the video recording of the booking process contradicted Lee's allegations and showed that each officer acted reasonably under the circumstances. The court concluded that Officer Montana's actions did not constitute a "vicious assault" as Lee contended, and were instead reasonable police procedures for handling a belligerent and aggressively resistant arrestee. *Id.* at *20–25. The district court likewise held that the other officers' physical actions against Lee did not amount to excessive force, and that the Lees' bystander-liability claims against the other officers for failing to intervene were meritless both because Officer Montana did not violate Lee's constitutional rights and because none of the officers could have known that Officer Montana would have acted as he did in time for them to intervene. *Id.* at *27–34. The district court held that the officers were therefore entitled to qualified immunity.

The district court also granted summary judgment for the defendants (1) as to plaintiffs' official-capacity claims because § 1983 does not permit recovery against a municipality for injuries caused by its employees or agents, *id.* at *11–12; (2) as to the municipal-liability claim because plaintiffs offered no evidence of inadequate training or causation, *id.* at *33; (3) as to the loss-of-

consortium claim because a spouse cannot state such a claim under § 1983, *id.* at \*36; and (4) as to the punitive-damages claim because there was no evidence that any officer acted with the requisite malicious intent. *Id.* at \*38.

The Lees appeal the district court's grant of summary judgment on the excessive-force claims under § 1983, but they do not appeal the grant of summary judgment on the claims against the officers in their official capacity, the municipal-liability claim against the City of Norwalk, the loss-of-consortium claim, or the claim for punitive damages. The Lees also do not appeal the Rule 12(b)(6) dismissal of their state-law claims for assault and battery and intentional infliction of emotional distress. We review the district court's judgment *de novo*, viewing the facts in the light most favorable to the Lees as the nonmovants and giving them the benefit of all reasonable inferences. *See King v. Taylor*, 694 F.3d 650, 661 (6th Cir. 2012).

The officers are entitled to qualified immunity on both the handcuffing claim and the police-station-assault claim. Qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies unless it would be obvious to a reasonably competent official that the actions taken were unlawful, and the plaintiffs bear the burden of showing that the defendants are not entitled to qualified immunity. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Officers Montana and Hipp are entitled to qualified immunity on the handcuffing claim because the Lees have not raised a genuine issue of material fact as to whether any reasonable officer would have known that this conduct violated Lee's constitutional rights. To defeat qualified immunity, the Lees must show "that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). No reasonable officer would have concluded, in the situation that Officers Montana and Hipp confronted, that Lee's constitutional rights were being violated.

Even if we assume that Lee complained that the handcuffs were too tight, that Officers Montana and Hipp ignored those complaints, and that an injury to Lee's wrists resulted from the handcuffing, no reasonable officer would have known that ignoring Lee's complaints during the short drive to the police station was unlawful. Lee was handcuffed shortly before and during the drive from the Burger King parking lot to the Norwalk police station, a distance of 1.5 miles that can be driven in less than five minutes. *See Lee*, 2012 U.S. Dist. LEXIS 123631, at *18 n.1. In a similar situation, where an arrestee was handcuffed during a ten-minute ride to the police station, this court held that "a reasonable officer would not know that the failure to respond to a complaint about tight handcuffs during a ten-minute ride to the police station violates the Constitution." *Fettes v. Hendershot*, 375 F. App'x 528, 533 (6th Cir. 2010). We emphasized in *Fettes* that there is no clearly established "constitutional requirement obligating officers to stop and investigate each and every utterance of discomfort." *Id.* Plaintiffs dispute how long Lee was handcuffed, but even if we assume

that she was handcuffed for more than five minutes, the record indicates that she was not handcuffed for very much longer—certainly not long enough for the duration of her handcuffing to cause any reasonable officer to know that his conduct violated the arrestee's rights.

*Morrison v. Board of Trustees*, 583 F.3d 394, 401 (6th Cir. 2009) does not compel a different conclusion. In *Morrison*, the officer allegedly handcuffed the plaintiff too tightly, did not loosen the handcuffs when asked to do so, told the plaintiff that he could place the handcuffs on "as tight as he wanted to and that's how they were staying," *id.* at 402, and kept the plaintiff handcuffed for forty to fifty minutes. These facts distinguish *Morrison* from Lee's case.

The defendants are also entitled to qualified immunity on the Lees' claims arising from the booking at the police station, because the Lees have not raised a triable fact issue as to whether any officer violated Lee's constitutional rights. Mimi Lee alleges that she was viciously assaulted by Officer Montana at the police station, and that the other officers present are liable for failing to intervene or for assisting in Officer Montana's assault. But Lee's allegations are contradicted by the video evidence in the record. Although ordinarily the plaintiffs' version of the facts must be accepted as true when deciding the defendant's motion for summary judgment, a video that contradicts a nonmovant's version of the facts can support a grant of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 381 (2007); *Marvin v. City of Taylor*, 509 F.3d 234, 249 (6th Cir. 2007).

The video evidence establishes that Officer Montana did not use constitutionally excessive force against Lee. The video shows that Mimi Lee was belligerent and confrontational throughout her time in the booking area. *See* R. 28, Exhibit 1 (DVD), segment ending in 678 at 2:50–5:30. The

Lees' characterization of the officers' actions as a "vicious assault" is not accurate. The video shows that Officer Hipp only shoved Lee's shoulder mildly and gestured for her to sit back down in the chair. *Id.* at 3:44. The Lees contend that Officer Montana then "grabbed her" and "shoved her onto the table" before he "choked her" with his right forearm. The video shows that Officer Montana took hold of the sleeves of Lee's sweatshirt in an effort to guide her back to the chair she had been sitting in, then applied force to her neck with his forearm after she flailed and appeared to start to swing at him. *Id.* at 3:46–3:48.

The Lees' allegation that Officer Montana continued to choke Mimi Lee on the table is overstated. Although the video shows that Officer Montana maintained the choke hold for a period, it is clear that Lee was kicking and struggling during that time; she was not "limp" and compliant as she claims. *See id.* at 3:50–4:05. The Lees also claim that Officer Montana then threw Lee to the ground and landed on top of her, continuing to choke her with his forearm across her neck. The video shows that while Lee was taken to the ground and handcuffed again by Officer Montana and other officers, the entire process took a matter of seconds and, once Lee was handcuffed again, the officers refrained from using further force against her. *See id.* at 4:05–5:05. Although plaintiffs claim that Officer Montana shouted "Spray the bitch," they do not claim that Lee was ever pepper sprayed. While Officer Montana may not have used the minimum amount of force necessary to subdue Lee, the video shows that the force Officer Montana used was not constitutionally excessive.

At the summary judgment stage, video evidence contradicting a plaintiff's claims is sufficient to affirm a grant of summary judgment. In *Griffin v. Hardrick*, 604 F.3d 949 (6th Cir. 2010), this

court found, based on video evidence, that officers did not use excessive force in restraining the plaintiff because the plaintiff's aggressive resistance and noncompliance, including a "loud, lengthy, and animated conversation" with a nearby nurse, "gave [the defendant officer] a reasonable basis to believe that force would be necessary to control [the plaintiff]." *Id.* at 954–55. Although *Griffin* was an Eighth Amendment excessive-force case involving a prisoner, its reasoning is persuasive in the Fourth Amendment context. The Lees' entire claim rests on the false premise that Officer Montana's actions were unreasonable because Mimi Lee "did not pose a threat at the police station." The video recording, however, makes clear that Officer Montana had a reasonable basis to believe that Lee posed a sufficient threat that force was necessary to subdue her. In light of the video evidence in the record, plaintiffs have not met their burden of raising a triable fact issue and Officer Montana is therefore entitled to qualified immunity.

The video also makes clear that Officers Hipp, Cook, and Light had very minimal physical contact with Lee, such that no rational juror could find that any of these officers applied excessive force. *See* R. 28, Exhibit 1 (DVD), segment ending in 678 at 3:00–5:30. Moreover, plaintiffs' bystander claims against these officers fail to raise a triable fact issue because Officer Montana did not use excessive force against Lee, as detailed above. Officers Hipp, Cook, and Light were therefore entitled to qualified immunity.

The district court's judgment is affirmed.