ALICE M. BATCHELDER,
Circuit Judge, Concurring in part and dissenting in part.
I concur with the majority on the unlawful-seizure and failure-to-train claims. As for the excessive-force claim, however, the lead opinion falls into the same trap as the opinion in Morrison v. Board of Trustees of Green Township, 583 F.3d 394 (6th Cir.2009): it conflates the two-step qualified immunity analysis. Because the Supreme Court has disavowed the former manner of handling these claims, in which a court’s determination on the merits would dictate the result on qualified immunity, this court must follow the Supreme Court’s mandates rather than its own. A failure to do so creates a constitutional requirement for police officers to investigate every handcuff-related complaint. Because the majority’s analysis contradicts the Supreme Court’s clear guidance on the issue, reaching the wrong result in the process, I respectfully dissent.
The majority roots its holding in both Morrison and the long line of cases on which Morrison relied “in which [this court] held that an officer is not entitled to qualified immunity if the plaintiff has shown a factual dispute as to whether the plaintiff complained that the cuffs were too tight, the officer ignored the complaints, and the plaintiff was injured from the cuffs.” Maj. Op. 414. The latter set of eases is a shaky foundation, however, given intervening Supreme Court precedent. For instance, in Kostrzewa v. City of Troy, 247 F.3d 633 (6th Cir.2001), we noted that “[a]s this circuit has analyzed the qualified immunity issue in excessive force cases, the question of whether the reasonable officer would have known his conduct violated clearly established constitutional rights can be answered by the initial inquiry of whether the officer’s use of force was objectively reasonable.” Id. at 641. That case also noted, however, that the Supreme Court had recently heard argument in a case that presented the issue as to “whether the test for qualified immunity is the same as the test for reasonableness under the Fourth Amendment.” Id. at 642 n. 5.
The opinion in that Supreme Court ease was issued later that year, and it forecloses the conflation of the merits and the qualified-immunity analyses. In Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court mandated that courts must look at two distinct questions when determining whether an officer is entitled to qualified immunity: first, “whether a constitutional right would have been violated on the facts alleged” and second, “whether the right was clearly established.” Id. at 200, 121 S.Ct. 2151. And the Court reiterated that rather than focus on “general proposition[s],” a court must ensure that “the right the official is alleged to have violated [was] ‘clearly established’ in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Id. at 202, 121 S.Ct. 2151 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). “The relevant, dispositive in *417 quiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Id. Thus, the approach the lower court had taken — described by the Court as denying “summary judgment any time a material issue of fact remains on the excessive force claim” — could “undermine the goal of qualified immunity to ‘avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment’ ” and was thus improper. Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
Thus, to the extent that Morrison, despite its being decided after Saucier, conflates the merits and the qualified-immunity inquiries, it is inappropriate to rely on that ease as dispositive. And it appears that this is exactly what Morrison did. The court affirmed the district court’s denial of qualified immunity because it ruled that “[Morrison] has offered sufficient evidence to create a genuine issue of material fact regarding each element of the handcuffing test.” Morrison, 583 F.3d at 404. This is precisely what the Supreme Court in Saucier held to be improper.
Instead of Morrison, we should follow the Scmder-eompliant precedent of O’Mal-ley v. City of Flint, 652 F.3d 662 (6th Cir.2011). In that case, we noted that even when a plaintiff makes a sufficient showing to survive summary judgment on the underlying excessive-force claim, “a defendant officer may still be entitled to summary judgment on the basis of qualified immunity if it would not be clear to a reasonable officer that he was violating the plaintiffs rights.” . Id. at 671. We further noted that “our precedents fail to notify officers that any response to a complaint of tight handcuffing other than an immediate one constitutes excessive force.” Id. at 672 (quoting Fettes v. Hendershot, 375 Fed.Appx. 528, 533 (6th Cir.2010)). Indeed, “a constitutional requirement obligating officers to stop and investigate each and every utterance of discomfort and make a new judgment as to whether the handcuffs are ‘too tight’ .is neither reasonable nor clearly established.” Id. (quoting Fettes, 375 Fed.Appx. at 533).
The majority held that Morrison and the cases on which Morrison relied “clearly establish that a plaintiff can make a showing of a constitutional'violation based on evidence of the-plaintiffs complaint, the officer’s refusal to respond, and the plaintiffs injury.” Maj. Op. 414. This does exactly what O’Malley called unreasonable: • it obligates all officers in the future to stop and investigate each and every utterance of discomfort, or else face the specter of a jury trial on an excessive-force claim. Because qualified immunity is meant to protect “all but the plainly incompetent or those who knowingly violate the law,” Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), forcing every officer who does not investigate every utterance of discomfort — no matter how miniscule the complaint or how little time has passed — to go to trial is plainly inappropriate.
Instead, we must look to whether “the contours of a right are sufficiently clear” that “every reasonable official would have understood that what he is doing violates that right.” Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (emphasis added) (internal quotation marks omitted). The Supreme Court does not “require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.” Id. If it has not, qualified immunity will operate “to protect officers from the sometimes hazy border between excessive and acceptable force.” Saucier, *418 533 U.S. at 206, 121 S.Ct. 2151 (internal quotation marks omitted).
Here, we have a situation in which an officer handcuffed a man in his home for about fifteen minutes, the man complained just once that his handcuffs were too tight, and the handcuffs left a small red mark that bruised. The cases in which we have found qualified immunity inappropriate featured much more egregious facts. See, e.g., Morrison, 583 F.3d at 402-03 (handcuffing for “forty to fifty” minutes that caused skin that was “all pinched over and [] turning black and blue”); Baskin v. Smith, 50 Fed.Appx. 731, 737-38 (6th Cir.2002) (handcuffing for forty-five minutes to an hour that pinched defendant’s wrists until they bled); Martin v. Heideman, 106 F.3d 1308, 1310 (6th Cir.1997) (handcuffing for thirty-five minutes that was so tight that defendant’s hands became numb and swollen). The cases in which we have found qualified immunity appropriate, on the other hand, were for shorter time periods or featured less noticeable injuries. See, e.g., Lee v. City of Norwalk, 529 Fed.Appx. 778, 782 (6th Cir.2013) (handcuffing for five minutes that led to a wrist contusion); Fettes, 375 Fed.Appx. at 533 (handcuffing for ten minutes that led to permanent damaging of the nerves in the wrist, despite defendant’s complaining “several times”).
While there are differences between orn-ease and the cases in which qualified immunity was found appropriate — most notably that both Fettes and Lee featured a discrete time period for the handcuffing while the police car drove to the station, as opposed to our case where the handcuffing was seemingly indefinite in the moment— our case is much more factually similar to Fettes and Lee than it is to the Morrison line of cases. The fifteen-minute time period is much closer to the five- to ten-minute window than the thirty-five- to fifty-minute window and the slight bruising — not visible while the handcuffs were on — is much less noticeable than the pinched over, bleeding, or swollen skin in the Morrison line of cases. At the very least, this case falls in the “hazy border” between excessive and acceptable force. Because the time period was so short, the injury so small, and the complaint so minimal, a contrary holding would clearly establish exactly what O’Malley feared: a requirement that every officer investigate every utterance of discomfort. If qualified immunity does not protect Officer Lang, it protects no police officer from a jury trial on an excessive-force claim premised on handcuffing.
The underlying excessive-force claim and the qualified-immunity inquiry have two different analyses in view. The underlying excessive-force claim asks whether Officer Lang was objectively unreasonable in his use of handcuffs, such that he violated al-Lamadani’s constitutional rights. The district court denied summary judgment on that claim, holding that there was a genuine dispute of material fact as to the officer’s reasonableness. The qualified immunity inquiry, however, asks a slightly, but significantly, different question. It asks whether every reasonable officer would have known that he was violating al-Lamadani’s constitutional rights through the use of handcuffs in this factual situation. It cares about more than one officer’s reasonableness; it looks to every officer’s reasonableness. Because the majority conflated the two analyses, and because I believe that this situation falls at the very least in the “hazy border” between excessive and acceptable force such that a reasonable officer would have thought himself not to be violating al-La-madani’s rights, I respectfully dissent from the majority’s excessive-force ruling.