NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0428n.06

**No. 17-2220**

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 21, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALBERT HANSEN | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RYAN APER | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, CLAY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Defendant Ryan Aper challenges the district court's denial of his motion for summary judgment in this interlocutory appeal from plaintiff Albert Hansen's Fourth Amendment lawsuit based on excessive force in applying handcuffs.  Aper argues that the doctrine of qualified immunity protects him from liability for his actions.  Because the facts of this case are materially indistinguishable from those of *Morrison v. Board of Trustees of Green Township*, where we upheld the district court's denial of qualified immunity, we affirm the district court's judgment.

I.

On September 28, 2013, Aper observed Hansen driving almost twenty miles per hour over the speed limit on U.S. Highway 2 in Michigan and initiated a traffic stop.  Hansen was accompanied by another passenger.  As he was talking with Hansen and his passenger, Aper smelled marijuana.  Aper asked Hansen to get out of the car and Hansen complied.  Aper then

handcuffed Hansen. Hansen stood outside the patrol vehicle for about five minutes while his car was searched, revealing two metal baking trays, marijuana, a silver Taurus handgun, and a marijuana roach.[1] Aper then handcuffed the other passenger and put both men in the patrol vehicle. Aper testified that he was instructed on the Michigan Police Department's handcuffing policies and that he received training on the proper use of handcuffs. He further testified that handcuffs are generally tested for tightness by placing a finger between the cuff and the arrestee's wrist.

Once Hansen was in the car, he told Aper that he had "extremely high blood pressure," that "the cuffs are tight," and that they hurt. DE 22-3, Hansen Dep., Page ID 104. Aper admitted that Hansen "made reference to the handcuffs bothering him" and "complained of discomfort." DE 28-9, Aper Dep., Page ID 387. According to Hansen, Aper responded that handcuffs "are supposed to hurt" and did not check the cuffs to see if they were too tight. DE 22-3, Hansen Dep., Page ID 104, 113. Aper, however, stated that he did check the cuffs to see if they were too tight, concluded that they were on properly, and attributed Hansen's discomfort to the fact that he was leaning back and putting more pressure on his wrists.

Hansen estimated that he remained in handcuffs for about thirty minutes, possibly up to forty minutes. He complained to Aper once more but did not say anything else "because, you know, it wasn't to my benefit to say anything." DE 22-3, Hansen Dep., Page ID 104. However, he testified that he was "squirming" and "in visible pain." *Id.* at 113. After the cuffs were removed, Hansen stated that he had indentations on his wrists. He did not take any photographs and could not remember whether he showed his passenger his wrists. He did not show Aper his wrists.

Hansen and his passenger had been traveling to Hansen's seasonal home in Kearsarge, Michigan at the time of the traffic stop. After the arrest, Hansen continued to Kearsarge and spent

---

[1] Hansen's passenger later submitted an affidavit stating that the marijuana belonged to him and Hansen had no knowledge of it.

two or three days there. Once Hansen returned from Kearsarge, he immediately saw his primary care provider, Dr. R. Rao Yalamanchi, whom he generally saw every two months for ongoing health problems that include arthritis, diabetes, gout, high blood pressure, and high cholesterol. Dr. Yalamanchi's office notes indicate that Hansen's post-arrest visit took place on October 4, 2013, six days after the incident. The notes state:

> Complaints of pa[i]n and numbness right dorsal hand, right thumb. Symptoms started when he was handcuffed for half an hour by police for speeding one week ago, symptoms are persistent. Patient claims handcuffs were too tight and to[o] painful and patient told the Police officer, however, patient was told by the Officer handcuffs are supposed to be tight.

DE 22-4, Yalamanchi Medical Records, Page ID 144. Dr. Yalamanchi further found "[m]inimum tenderness over the dorsal surface of right hand" and "[n]o motor weakness." *Id.* at 145. He "[a]dvised symptomatic treatment" and imaging studies if the pain did not improve. *Id.*

At Hansen's next visit on November 6, 2013, Dr. Yalamanchi's notes indicate that Hansen complained of a cold, numb feeling in his right hand that began after he was handcuffed. Dr. Yalamanchi advised an electromyography ("EMG") study of the hand. On December 17, 2013, Hansen underwent an EMG study of his right hand. The study was deemed "abnormal" and "show[ed] a lack of response of stimulation of the right radial nerve." DE 22-5, Cardiology Results, Page ID 238. The report concluded that "when considered in conjunction with the clinical history it appears that this is more likely due to crush injury to the radial nerve at the wrist level." *Id.*

Hansen continued to complain of numbness in his right hand at his visits to Dr. Yalamanchi, and he was prescribed pain medication. At Hansen's February 2014 visit, Dr. Yalamanchi advised Hansen to consult with a neurologist. Hansen subsequently visited Dr. Girish Mangalick on December 9, 2014 for a nerve test. Dr. Mangalick found "mild tenderness in the

inner aspect of the right forearm" and, citing the December 2013 EMG study results, "advised [Hansen] to take outpatient course of physical therapy." DE 22-6, Mangalick Records, Page ID 247. Hansen testified that he went to physical therapy twice a week for about a month but stopped after he had to get a knee operation and spend time recovering in a nursing home. Hansen still experiences some tingling and numbness in his hand. He incurred medical costs in excess of $2,500 for his hand injury, and Medicare and Health Alliance Plan filed liens for the unpaid bills.

Aper submitted into evidence an independent examination conducted by Dr. Steven Kushner, a doctor of osteopathic medicine. Dr. Kushner concluded that "there is no objective finding that Mr. Hansen suffered an injury traceable to the handcuffing that occurred on September 28, 2013. Mr. Hansen's subjective statements of pain are not supported by the examination." DE 22-7, Letters & Aff., Page ID 258. Dr. Kushner found that aside from age-related osteoarthritis, Hansen did not have any abnormalities in his right hand. He also opined that the medical records from Dr. Mangalick "do[] not show the raw data . . . [just] an opinion, with the doctor feeling that there was no response in the superficial branch of the radial nerve." *Id.* at 255.

On September 9, 2016, Hansen filed a lawsuit against Aper under 42 U.S.C. § 1983, alleging that Aper violated Hansen's Fourth Amendment right to be free from unreasonable seizure by handcuffing Hansen too tightly. Aper moved for summary judgment based on qualified immunity, arguing that Hansen's "subjective complaints" could not support the conclusion that Aper violated Hansen's constitutional rights. In an opinion issued from the bench, the district court denied Aper's motion, concluding that there were genuine issues of material fact as to whether Aper ignored Hansen's complaints and whether Hansen suffered injury as a result. Aper timely appealed.

II.

First, the parties dispute appellate jurisdiction over this matter. Since an appeal from a district court's denial of qualified immunity is interlocutory, such a denial "is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment" only "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Thus, we "may only exercise jurisdiction over the appeal 'to the extent that a summary judgment order denies qualified immunity based on a pure issue of law.'" *Morrison*, 583 F.3d at 399 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006)). Hansen argues that this court does not have jurisdiction over Aper's appeal because the district court denied summary judgment based on its conclusion that genuine issues of material fact existed.

In contrast, Aper argues that this case does raise a "pure issue of law"—whether the facts Hansen pled are sufficient to deny Aper qualified immunity. Aper claims that the current state of the law is "ambiguous" and insufficient to put a law enforcement officer in Aper's position on notice that his actions were unlawful. He further argues that we should reevaluate the legal standard we apply to § 1983 handcuffing cases and require that Hansen produce more evidence to prove that he suffered an injury caused by the handcuffs.

Insofar as Aper claims that the law did not put him on notice that his actions were illegal, we have jurisdiction over this appeal because whether law is "clearly established" is a legal issue. *See Welch v. Spaulding*, 627 F. App'x 479, 484 (6th Cir. 2015) (reviewing a denial of qualified immunity to determine whether a prisoner's constitutional right was clearly established). But our jurisdiction does not extend to Aper's other argument, which is that Hansen failed to produce sufficient evidence proving an injury causally related to the handcuffing. The district court determined that Hansen had produced sufficient evidence on the injury element to proceed to a

jury and explicitly noted that Hansen's ability to get before a jury and his ability to succeed at a trial are two different inquiries. The district court therefore held that Hansen had established a genuine issue of material fact as to whether he suffered injury due to the handcuffs. "[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). Therefore, we dismiss for lack of jurisdiction Aper's claim that Hansen did not produce sufficient evidence of injury.

III.

A.

We review a district court's denial of qualified immunity *de novo*. *Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017) (citing *United States v. Ohio*, 787 F.3d 350, 353 (6th Cir. 2015).

B.

Hansen filed suit under 42 U.S.C. § 1983, which "imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). State actors do, however, receive immunity from suit in certain instances. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818). This court "ask[s] two questions in evaluating whether a law-enforcement officer is entitled to qualified

immunity on an excessive-force claim: '(1) whether the officer violated the plaintiff's constitutional rights under the Fourth Amendment; and (2) whether that constitutional right was clearly established at the time of the incident.'" *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (quoting *Kent v. Oakland County*, 810 F.3d 384, 390 (6th Cir. 2016)). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Aper argues that his actions did not violate clearly established law because "[t]he law of this Circuit fails to give notice to law enforcement that any discomfort, no matter how minor the complaints, renders a handcuffing unconstitutional." CA6 R. 22, Appellant Br., at 26.

Indisputably, the right to be free from "excessively forceful handcuffing" is clearly established for qualified immunity purposes. *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001); *see also O'Malley v. City of Flint*, 652 F.3d 662, 671 (6th Cir. 2011) ("The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." (quoting *Morrison*, 583 F.3d at 401)). Furthermore, we have established a test for determining which handcuffing claims survive summary judgment: "a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Morrison*, 583 F.3d at 401. With respect to the injury element, we have held that plaintiff testimony of bruising, swelling, or discoloration while in the handcuffs is sufficient by itself to survive summary judgment. *Id.* at 403–04 (gathering cases).

*Morrison* denied qualified immunity where the plaintiff was handcuffed and complained about the tightness, the officer ignored the complaints, and the plaintiff suffered bruising and marks on her wrists. 585 F.3d at 402. Here, Aper admits that Hansen complained about the handcuffs. He alleges that he did check the handcuffs to make sure they were not too tight, while Hansen claims that Aper ignored his complaints and told him that handcuffs were "supposed to hurt." In addition to claiming that the cuffs caused him pain and left indentations on his wrist, Hansen produced medical records indicating that he suffered a physical injury caused by the handcuffing. Because Hansen has met his burden of establishing at least a fact issue with respect to every element of the *Morrison* test, the inquiry should, it seems, end here.

C.

However, Aper points to three cases decided after *Morrison* which he argues are inconsistent with that case.[2] First, in *Fettes v. Hendershot*, the plaintiff was handcuffed, complained multiple times that the handcuffs were too tight and were causing him pain, and alleged that he suffered nerve damage to his wrists. 375 F. App'x 528, 533 (6th Cir. 2010). In response to the plaintiff's complaints, the officers assured him that he would only be handcuffed for ten minutes and that "[he didn't] have long." *Id.* While the panel cited the three requirements from *Morrison*, it still concluded that the officer was entitled to qualified immunity because "[o]ur precedents fail to notify officers that any response to a complaint of tight handcuffing other than an immediate one constitutes excessive force." *Id.* This language was quoted in a subsequent published decision, *O'Malley v. City of Flint*, where the panel relied on *Fettes* to reverse the district court's denial of qualified immunity. 652 F.3d at 671–72. In *O'Malley*, the plaintiff also

---

[2] Aper also refers to a district court case, *Hakos v. Demuth*, which has similar facts to the instant case and where the court granted qualified immunity. No. 1:13-CV-01427, 2014 WL 517497, at *4–5 (N.D. Ohio Feb. 10, 2014). However, because *Hakos* is a district court case, it does not bear on whether the law of the circuit was clearly established.

complained about the tightness of the handcuffs and the officer did not check or loosen them, *id.* at 666, but unlike in *Morrison*, "[the plaintiff] did not have an obvious physical injury" in *O'Malley*, *id.* at 671.

Finally, Aper argues that *Lee v. City of Norwalk, Ohio* conflicts with *Morrison* as well. There, the panel stated that even assuming the plaintiff met all three of the *Morrison* requirements for surviving summary judgment, "no reasonable officer would have known that ignoring [the plaintiff's] complaints during the short drive to the police station was unlawful." *Lee*, 529 F. App'x 778, 782 (6th Cir. 2013). Because the plaintiff in *Lee* was handcuffed for a much shorter amount of time—five minutes as opposed to the forty to fifty minutes in *Morrison*—and because the officers in *Morrison* affirmatively refused to loosen the plaintiffs' handcuffs, the panel believed that the two cases were sufficiently different such that it was not bound by *Morrison*'s holding. *Id.*

Aper's reliance on *Fettes*, *O'Malley*, and *Lee* is misplaced because these cases are all distinguishable from *Morrison*. First, *O'Malley* is easily distinguishable because there, "[the plaintiff] did not have an obvious physical injury." 652 F.3d at 671. Although the record evidence demonstrated that the plaintiff testified that his wrists were "bruised" and "swollen," the plaintiff did not appear to offer any additional medical evidence of injury in that case. Therefore, the plaintiff did not meet one of the essential elements of the *Morrison* test. Hansen, though, has presented medical records diagnosing him with a crush injury caused by handcuffing.

*Fettes* and *Lee*, in addition to being unpublished and therefore non-precedential, are also distinguishable from both *Morrison* and this case. The plaintiff in *Fettes* was handcuffed for around ten minutes, 375 F. App'x at 533, and in *Lee*, the handcuffing lasted only between five to ten minutes, 529 F. App'x at 782. *But see O'Malley*, 652 F.3d at 666 (the plaintiff appears to have

been handcuffed for about two hours). In contrast, the plaintiff in *Morrison* was handcuffed for forty to fifty minutes, 583 F.3d at 403, and Hansen was handcuffed for thirty to forty minutes. Another pertinent distinction between *Fettes* and both *Morrison* and the instant case has to do with the officers' reactions to being told the cuffs were too tight. In *Fettes*, law enforcement assured the plaintiff that the discomfort would be temporary because they were only driving a short way to the station, 375 F. App'x at 533, whereas the officer in *Morrison* allegedly told the plaintiff that "he could place the handcuffs on 'as tight as he wanted to and that's how they were staying,'" 583 F.3d at 402. Similarly, according to Hansen, Aper told him that handcuffs are "supposed to hurt." In both *Morrison* and the instant case, then, the defendant did not merely ignore the plaintiff's complaints but actively rebuffed them.

Granting Aper qualified immunity here would thus directly conflict with *Morrison*, which controls in this circuit absent an intervening change in the law. *See Baynes*, 799 F.3d at 616 ("Under the law-of-the-circuit doctrine, only the Court sitting en banc may overrule published circuit precedent, absent an intervening Supreme Court decision or a change in the applicable law." (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 507 (6th Cir. 2004))).[3] Aper was on notice that handcuffing violates the Fourth Amendment if the arrestee is handcuffed, complains about the tightness, law enforcement ignores the complaint, and the arrestee suffers injury. Therefore, the district court correctly denied Aper qualified immunity.

---

[3] Hansen relies on *Baynes* in his brief for the argument that this court "has already considered and rejected" the trio of cases relied upon by Aper. CA6 R. 27, Appellee Br., at 32. In *Baynes*, a panel of this court squarely rejected a defendant's attempt to use those three cases to argue that his actions did not violate clearly established law, stating, "We cannot rely on *Fettes, Lee*, and *O'Malley,* decisions that failed to follow the dictates of *Hope* and broke from earlier, controlling precedent of this Circuit, in a manner that was not necessitated by any intervening change in governing law." *Baynes*, 799 F.3d at 617. However, *Baynes* was published in 2015, while Aper's handcuffing of Hansen took place in 2013. Whether the law was clearly established is evaluated "at the time of the challenged conduct," *see Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), so we cannot consider *Baynes* in determining whether Aper was entitled to qualified immunity.

IV.

For the foregoing reasons, we affirm the judgment of the district court.