RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ALAN BAYNES,

*Plaintiff-Appellant,*

*v.*

No. 14-2235

BRANDON CLELAND, Macomb County Sheriff Deputy; FRANK MAIORANA, Macomb County Sheriff Deputy; MACOMB COUNTY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:12-cv-14289—Linda V. Parker, District Judge.

Decided and Filed:  August 24, 2015

Before:  KEITH and CLAY, Circuit Judges; MARBLEY, District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:**  Christina D. Davis, ROMANO LAW, P.L.L.C., Pleasant Ridge, Michigan, for Appellant.  Hilary A. Ballentine, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellees.

_____

**OPINION**

_____

MARBLEY, District Judge.  Plaintiff-Appellant Alan Baynes appeals the district court's grant of summary judgment to Defendants Deputy Brandon Cleland, Deputy Frank Maiorana, and Macomb County on his claims of excessive force and deliberate indifference to a serious

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

medical need under 42 U.S.C. § 1983.  We hold that Defendants Cleland and Maiorana are not entitled to qualified immunity for Baynes' claim of excessive force.  Accordingly, the district court's judgment on Baynes' excessive force claim is hereby **REVERSED** and **REMANDED** for trial.  We further hold that Baynes' claim of deliberate indifference to a serious medical need is insufficient to withstand summary judgment, and hereby **AFFIRM** the district court's judgment on that claim.

## I.  BACKGROUND

### A.  Factual Background

On July 5, 2010, at approximately 8:30 p.m., an unknown motorist called the police dispatch and reported seeing a male passenger in a white Chevrolet Impala repeatedly striking the female driver on Interstate 94, in Harrison Township, Michigan.  The witness also reported the license plate number.  The police dispatch communicated this information to Macomb County Sheriff Deputies Brandon Cleland and Frank Maiorana.  Both Deputy Cleland and Deputy Maiorana, who were driving in separate patrol vehicles at the time, responded to the call.

Deputy Cleland located the suspect vehicle and initiated a traffic stop at I-94 and Harper.  Deputy Maiorana provided back up.  The Deputies claim they approached the passenger side of the vehicle together and instructed the passenger, later identified as Baynes, to exit the car.  Deputy Maiorana then conducted a pat-search for weapons, handcuffed Baynes, and placed him in the back of Deputy Cleland's patrol vehicle.  Deputy Maiorana claims that he checked the handcuffs as he placed them on Baynes to ensure they were not too tight.  Baynes and Deputies Cleland and Maiorana generally agree that Baynes was cooperative with the officers' instructions and that he was placed in custody without incident.

After handcuffing Baynes, Deputy Cleland claims that he spoke with the driver of the vehicle, identified as Mary Yee, Baynes' girlfriend of six years.  Deputy Cleland claimed that Yee first denied having any problems with Baynes; but, after hearing the witness's police report, she admitted that Baynes had hit her and grabbed her arm while she was driving.  Yee claimed Baynes was upset because he did not want to leave a party they were attending.  Both Deputy Cleland and Deputy Maiorana observed Yee's right arm where they saw a six to seven-inch long

bruise from her elbow to shoulder and observed that the same area was swollen and red, with light scratches. No photographs of Yee's injuries were taken.

Deputy Cleland then spoke to Baynes, who was in the back of the police car, about the incident and ultimately transported Baynes to the Macomb County Jail. The exact time it took for Deputy Cleland to transport Baynes to the jail is unclear. The district court took judicial notice, however, that the distance between the location of the traffic stop, at I-94 and Harper, and the Macomb County Jail is seven miles. The district court also concluded that even if Deputy Cleland were traveling at 25 miles per hour, he would have reached the jail in less than 20 minutes. Once at the jail, Deputy Cleland claims he filled out a booking card, and then handed Baynes over to the booking staff.

During his deposition, Baynes testified that he complained to the deputies that the handcuffs were too tight. He specifically recalled that during the car ride to the police station, he asked the officer who transported him to "loosen up the cuffs." Baynes could not recall the exact response he received, but believed one of the deputies said "something like 'they're not too tight' or that 'if [I] loosen[ed] them up, you'll be able to get out of them' or something like that." According to Baynes, once he arrived at the jail, he remained in handcuffs while he was searched by jail personnel and for some period of time during the intake process that followed. Baynes indicated that the handcuffs were removed only once he was placed in a cell. He was unable to recall with specificity the amount of time that he was in handcuffs. Neither deputy testified as to the amount of time that Baynes spent in handcuffs.

Following his release from Macomb County Jail, Baynes was treated by Dr. Samson Samuel for injuries to his wrists and diagnosed with "bilateral radial sensory neuropathy from handcuffs." Baynes also indicated that he was prescribed wrist guards by Dr. Samuel related to his wrist injuries, which he wears periodically. During his deposition, Deputy Cleland acknowledged that he had received training on how quickly and safely to apply handcuffs and recognized health concerns that may arise when handcuffs are placed too tightly, such as loss of blood circulation. Similarly, Deputy Maiorana acknowledged during his testimony that he knew that handcuffing a person too tightly could cause nerve damage.

At some point prior to this incident, Baynes began experiencing memory loss, chronic fatigue, and severe breathing problems. Baynes believes that these issues were caused by exposure to toxic mold while living in a condominium in St. Clair Shores, Michigan, from 2004 to 2009. Baynes testified that he takes fifteen medications for his medical issues, including pills and inhalers. Because of his illness, the Social Security Administration has determined that he is disabled and, as a result, he has not worked since 2008. Baynes claims he suffers from memory loss, chronic fatigue, and severe breathing problems that may be triggered by a variety of things, such as perfume and automobile exhaust.

Baynes contends that, at some point during his interaction with the deputies, as he was being taken into custody, he told the officers that he needed his medication. He claims that during intake procedures at the jail, he also told the intake officer that he needed his medication. Baynes claims he received responses of "not now" or "don't worry about it." During the intake procedures, jail personnel searched and found a small plastic bag containing some of Baynes' medication. Baynes initially testified that the jail personnel did not want to allow him to take the medication, but later recalled being allowed to take the pill with a glass of water. During his deposition, Baynes also briefly mentioned that, during his stay in the jail, he "told the people that [he] was having a hard time breathing" and "they told me it was all in my head." Baynes testified that he later learned that there had been mold in the jail.

During his deposition, when asked about the effect of not having his medications in Macomb County Jail, Baynes claimed that his "condition worsened," resulting in symptoms including memory loss, fatigue, and constipation. He also testified that after his stay at Macomb County jail, his sensitivity to things like automobile exhaust and perfume was heightened. Baynes further indicated that the exposure to mold in the jail exacerbated his medical conditions. Baynes submitted blood tests performed on July 15, 2010, at the request of Dr. Michael Harbut which showed abnormal levels of various types of mold.

Baynes was released from the Macomb County jail at approximately 6:00 p.m. on July 6, 2010, the day after the incident took place. He was arraigned that same day and charged with domestic violence, to which he pleaded not guilty. The charges were dismissed on September 4, 2010, when Yee failed to appear for trial.

## B. *Procedural Background*

On or around September 26, 2012, Baynes commenced this action in the Eastern District of Michigan against Macomb County Sheriff Deputies Cleland and Maiorana and Macomb County, under 42 U.S.C. § 1983. Baynes first claimed that Deputies Cleland and Maiorana violated his Fourth and Fourteenth Amendment rights through use of excessive force by handcuffing him too tightly, causing severe and permanent injuries. Second, he alleged that Defendants exacerbated his asthmatic condition by failing to provide him with his medications and by exposing him to mold while he was in jail, which the district court construed as a claim of deliberate indifference to a serious medical need. Baynes' complaint also alleged that Macomb County had a custom and practice of failing to train properly its officers.

Defendants filed a Motion for Summary Judgment to which Baynes timely responded. The district court held a hearing on the motion and subsequently issued its Opinion and Order granting Defendants' motion, dismissing the case, and entering Judgment in favor of Defendants. *Baynes v. Cleland*, No. 12-cv-14289, 2014 WL 4373755 (E.D. Mich. Sept. 3, 2014) (slip op.).

On Baynes' excessive force claim, the district court concluded that Defendant Cleland was entitled to qualified immunity because there was "no evidence suggesting that Deputy Maiorana did not follow proper handcuffing procedures when he handcuffed [Baynes]"; Baynes complained only once about the tightness of his handcuffs and thus "the absence of any egregious, abusive or malicious conduct supports the reasonableness of the deputy's conduct"; and once Baynes and Cleland arrived at the jail, "Deputy Cleland turned over [Baynes] to the booking officer." *Id*. at *6.

On the deliberate indifference claim, the district court determined that although Baynes established a "sufficiently serious" medical need where "his medical problems were diagnosed by a physician and mandated treatment," there was "no evidence…that [Baynes] was denied medical treatment." *Id*. at *7. Further, the district court noted that there was no evidence that Baynes "demonstrated any breathing problems while incarcerated or that Defendants were aware of any problems requiring a response." *Id*.

With respect to Baynes' claim against Defendant Macomb County, the district court held that Baynes never identified a County policy or custom that he claims caused the alleged constitutional violations; thus, his allegations were insufficient to survive summary judgment. *Id*. at *7-8.

Baynes filed a Notice of Appeal on September 23, 2014. Baynes appeals the district court's entry of judgment in favor of Defendants Cleland, Maiorana, and Macomb County. We have jurisdiction to consider the appeal pursuant to 28 U.S.C. § 1291 because Baynes appeals the final decision of the district court.

## II. DISCUSSION

This court reviews the denial of summary judgment on grounds of qualified immunity *de novo* because application of this doctrine is a question of law. *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 399 (6th Cir. 2009); *McCloud v. Testa,* 97 F.3d 1536, 1541 (6th Cir. 1996). Summary judgment will be affirmed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On the other hand, if a reasonable jury could return a verdict for the non-moving party, summary judgment for the moving party is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251-52) (stating that the necessary inquiry is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"). The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is deemed material only if it might affect the outcome of the lawsuit under the governing substantive law. *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson*, 477 U.S. at 247-48). In reviewing a party's summary judgment motion, a court must view the facts and any inferences reasonably drawn from them in the light most favorable to the party against whom judgment was entered. *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).

Section 1983 of Title 42 of the United States Code imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights. *Brosseau v. Haugen,* 543 U.S. 194, 197-98 (2004). To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law. *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48); *see also Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010).[1]

## A. Excessively Forceful or Unduly Tight Handcuffing

Baynes first claims that Deputy Cleland and Deputy Maiorana deprived him of his right to be free from excessive force under the Fourth Amendment. On appeal, he argues that the district court erred in granting summary judgment on the basis of the deputies' qualified immunity.

### 1. Whether Plaintiff Made Out an Excessive Force Claim

Baynes brings this action under 42 U.S.C. § 1983, alleging Deputy Cleland and Deputy Maiorana violated his Fourth Amendment right to be free of excessive force during his arrest. This Court applies the Fourth Amendment's unreasonable seizure jurisprudence when analyzing such claims. *Morrison*, 583 F.3d at 400 (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)). Whether an officer has exerted excessive force during the course of seizure is determined under an "'objective reasonableness' standard." *Id*. at 401 (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). This inquiry requires "balanc[ing] the consequences to the individual against the government's interests in effecting the seizure." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). The assessment is fact-specific, based on the totality of the circumstances, and "pay[s] particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Kostrzewa*, 247 F.3d at 639 (quoting *Graham*, 490 U.S. at 396). We judge the

---

[1]The parties do not dispute that the deputies were acting under the color of state law during the incidents at issue in this case.

lawfulness of the conduct from the "'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Morrison*, 583 F.3d at 401 (quoting *Graham*, 490 U.S. at 396).

In the specific context of a claim for excessive force by way of unduly tight or excessively forceful handcuffing, the Sixth Circuit has established the following test to determine when a plaintiff has established an excessive force claim sufficient to survive summary judgment:

> In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing.

*Morrison*, 583 F.3d at 401 (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005)).

First, as the district court correctly concluded, Baynes has presented sufficient evidence to create a genuine issue of material fact that he complained that the handcuffs were too tight. The trial court found, however, that Baynes only complained during the ride to jail. Because it is undisputed that Deputy Cleland alone transported Baynes to the jail, the district court held that Deputy Maiorana must be dismissed because Baynes' complaint was not made directly to Maiorana. That conclusion was in error. Viewing the evidence in the light most favorable to the Plaintiff, there is evidence that Plaintiff complained about the tightness of the handcuffs to *both* deputies:

> Q: Did you say anything to the officers? I'm sorry. To the deputies.
>
> A: I told *them* my --
>
> Q: Go ahead.
>
> A: I told *them* my handcuffs were too tight, and I needed my medication, but which I said first, I don't remember because I was worried about it.

(R. 17-3 at 143) (emphasis added).[2]  Indeed, it is undisputed that Deputy Maiorana is the deputy who placed the handcuffs on Baynes. In addition to this response, in which it appears Baynes

---

[2]Presumably, the trial court assumed that the question "Did you say anything to the . . . deputies?" was intended as a question about what Baynes said during the car ride to jail because the question came immediately after the following line of questioning:

told both deputies that his handcuffs were too tight, Baynes also discussed a conversation he had while being transported to the jail, during which he claims he "asked [the deputy] to loosen up the cuffs." Thus, a reasonable trier of fact could find that Baynes complained of tightness to Deputy Maiorana at some point prior to the car ride to the jail, and to Deputy Cleland prior to, and/or during, the car ride. Therefore, the district court erred in dismissing Baynes' excessive force claim against Deputy Maiorana on the grounds that Baynes had not made out a claim of excessively forceful or unduly tight handcuffing against him.

Second, Baynes put forth sufficient evidence to establish a genuine issue of material fact that the deputies ignored his complaints that the handcuffs were too tight. This is so even though Baynes testified that Cleland replied to Baynes' complaints by telling Baynes that the handcuffs were not too tight, and if they were loosened, Baynes may be able to get out. This Court has held that a dismissive response from an officer is sufficient to meet the second prong of a claim for excessively forceful handcuffing; that is, a plaintiff can survive summary judgment even if the officer gave some reply to plaintiff's complaint if the response was essentially non-responsive. *See, e.g.*, *Morrison*, 583 F.3d at 402 (finding that plaintiff could "easily satisfy" the second prong of her excessive force claim where the officer "claimed he responded to the complaint by sticking his finger in between the handcuffs and [plaintiff's] skin to make sure [the handcuffs] were not 'too tight' " and said "he could place the handcuffs on 'as tight as he wanted to and that's how they were staying.'"). As the district court determined, to conclude that the deputy was responding to Plaintiff's complaints, "[t]he jury would have to believe that the handcuffs in fact were not too tight." Such a judgment is a credibility determination

---

Q. What's the next thing that happened that you recall?
A. I think I was handcuffed.
Q. Okay. And then what?
A. That was pretty much all that happened. I was handcuffed. That's really all I remember.
Q. And then you were transported to the jail?
A. Yes.

(R. 17-3 at 142). Because Plaintiff had been recounting all of his interactions with the deputies leading up to and during the arrest does not allow this Court, when viewing the evidence in the light most favorable to the Plaintiff, to assume that his response to the next, generally-phrased question – "Did you say anything to the . . . deputies?" – was a response only about what was said during the ride to jail. Plaintiff indicated he complained of the tightness of his handcuffs to more than one deputy and it is undisputed that Deputies Cleland and Maiorana were the only ones on the scene. This is sufficient to meet the first element of a claim for excessively forceful or unduly tight handcuffing to survive summary judgment.

inappropriate for a court on summary judgment. This is sufficient to meet the second prong of Baynes' excessive force claim against Deputies Cleland and Maiorana.

Third, Baynes has presented sufficient evidence to create a genuine issue of material fact that he suffered a physical injury as a result of the too-tight handcuffs. In his deposition testimony, Baynes testified that he could not feel his fingers because of the tightness of the handcuffs, and that he still experiences periodic numbness in his fingers. Our precedent establishes that this evidence is sufficient for Baynes to survive summary judgment. *See Morrison*, 583 F.3d at 402-403 (holding that the plaintiff's testimony that she suffered wrist marks and bruising from the handcuffs was sufficient to establish the necessary "physical injury"); *Martin v. Heideman*, 106 F.3d 1308, 1310, 1312-13 (6th Cir. 1997) (reversing the district court's award of qualified immunity, ruling that a genuine issue of material fact existed as to whether the defendant officer used excessive force under the circumstances where plaintiff complained of excessive force by being handcuffed so tightly that his hands became numb and swollen during the ride to jail and wait in a holding cell). Baynes also meets the third prong by producing medical records indicating that shortly after his release from jail, he was treated for wrist injuries, diagnosed with "bilateral radial sensory neuropathy from handcuffs," and was prescribed and required to wear wrist braces for approximately a year after the incident.

### 2. Whether the Officers are Entitled to Qualified Immunity

The doctrine of qualified immunity shields government officials performing discretionary functions from civil liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Phillips v. Roane Cnty., Tenn.,* 534 F.3d 531, 538-39 (6th Cir. 2008). To determine whether a government official is entitled to qualified immunity, we make two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation? These prongs need not be considered sequentially." *Miller*, 606 F.3d at 247 (internal quotation marks omitted) (citing *Jones v. Byrnes,* 585 F.3d 971, 975 (6th Cir. 2009) and *Pearson v. Callahan*, 555 U.S. 223 (2009)).

The plaintiff bears the burden to show that the defendant is not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). The issue of qualified immunity may be submitted to a jury only if "the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury." *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989)).

### i. Constitutional Violation

As we have consistently held, the Fourth Amendment prohibits unduly tight or excessively forceful handcuffing in the course of an arrest. *See, e.g.*, *Morrison*, 583 F.3d at 401; *Lyons*, 417 F.3d at 575; *Kostrzewa*, 247 F.3d 633, 639; *Martin*, 106 F.3d at 1313; *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993). As discussed in Part A.1, *supra*, Baynes has adduced sufficient evidence to survive summary judgment on his handcuffing claim. Under the same reasoning, for purposes of the qualified immunity analysis, viewing the facts in the light most favorable to him, Baynes has shown that a constitutional violation occurred. The trial court correctly came to this same conclusion.

### ii. Clearly Established

Although the district court agreed that Baynes established the first prong of the qualified immunity analysis, it ultimately found that Baynes' claim could not survive summary judgment because it failed the "clearly established" inquiry, finding that a reasonable officer would not have known he violated Baynes' Fourth Amendment rights. Because this issue was central to the district court's decision, a careful review of the "clearly established" inquiry is instructive here.

### a. The Meaning of "Clearly Established"

A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). The purpose of the "clearly established" prong, clarified by the Supreme Court's decision in *Hope v. Pelzer,* is to ensure that officials are on notice that their

alleged conduct was unconstitutional. 536 U.S. 730, 739, 741 (2002). As *Hope* made abundantly clear: "the salient question that the Court of Appeals ought to have asked is whether the state of the law [at the time of the action giving rise to the claim] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Id.* at 741. Although the focus of the clearly established prong is whether the official had notice that his alleged conduct was improper, we have determined that qualified immunity is an objective rather than a subjective inquiry. *See Caudill,* 431 F.3d at 911-12; *Cope v. Heltsley,* 128 F.3d 452, 458 (6th Cir. 1997) ("It is important to understand that Mrs. Heltsley's own subjective views on the legality of her staffing decisions are essentially irrelevant. Whatever she may actually have thought about the constitutional propriety of what she was doing, the pertinent test is an objective one, not subjective.").

In *Hope*, the Supreme Court established that, for purposes of qualified immunity, the precise factual scenario need not have been found unconstitutional for it to be sufficiently clear to a reasonable official that his actions violate a constitutional right – that is, for the right to be "clearly established." 536 U.S. at 739, 741. In fact, the Supreme Court determined that government officials can still be on notice that their conduct violates established law even in novel factual circumstances. The Court stated:

> As we have explained, qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S., at 206, 121 S.Ct. 2151. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell* [v. *Forsyth,* 472 U.S. 511,] 535, n.12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
>
> …
>
> Our opinion in *Lanier* thus makes clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances. Indeed, in *Lanier*, we expressly rejected a requirement that previous cases be "fundamentally similar." Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with "materially similar" facts.

*Id*. at 739, 741.[3] We have confirmed these principles in our own jurisprudence as well. *See, e.g.*, *Caudill v. Hollan*, 431 F.3d 900, 911-12 (6th Cir. 2005) (embracing *Hope*); *Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005) (same); *Burchett*, 310 F.3d at 942 (same); *see also St. John v. Hickey*, 411 F.3d 762, 774 (6th Cir. 2005) (same), abrogation on other grounds recognized in *Marvin v. City of Taylor*, 509 F.3d 234 (6th Cir. 2007).

The Court's driving concern in *Hope* was the "rigid gloss" the Eleventh Circuit had imposed on the qualified immunity analysis, which the Supreme Court characterized as "not consistent with our cases." *Hope*, 536 U.S. at 739. Specifically, the Eleventh Circuit had created a test requiring the case before it to be "materially similar" to a prior case in the circuit in order to meet the "clearly established" prong of the qualified immunity test. *Id.* at 736. The Court found that there was a "danger" in a "rigid, overreliance on factual similarity" in the qualified immunity context, and ultimately rejected the Eleventh Circuit's "materially similar" standard. *Id.* at 742-43. Ultimately, the *Hope* Court determined that an action's unlawfulness can be "clearly established" from direct holdings, from specific examples describing certain conduct as prohibited, or from the general reasoning that a court employs. *Id*. at 742-44; *see also Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (citing with support, and applying, this proposition from *Hope*).

To be sure, the Supreme Court also has also explained that generalizations and abstract propositions are insufficient to establish the law clearly. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011); *Brosseau*, 543 U.S. at 198-99 (reemphasizing the established principle that

---

[3]The Supreme Court has confirmed *Hope*'s continuing vitality and reaffirmed the principle for which it stands on multiple occasions. *See, e.g.*, *Safford Unified Sch. Dist. # 1 v. Redding*, 557 U.S. 364, 129 S.Ct. 2633, 2643, 174 L.Ed.2d 354 (2009) ("To be established clearly ... there is no need that 'the very action in question [have] previously been held unlawful.' . . . But even as to action less than an outrage, 'officials can still be on notice that their conduct violates established law ... in novel factual circumstances.'") (quoting *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) and *Hope*, 536 U.S. at 741, 122 S.Ct. 2508); *see also Brosseau*, 543 U.S. at 199, (discussing *Hope*). Moreover, the Supreme Court's decisions in *Camreta v. Greene*, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011), and *Ashcroft v. al-Kidd*, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011), do not overrule *Hope*, *Lanier*, or any case in that line. Notably, Justice Kennedy's concurrence in *al-Kidd* affirmatively cites *Lanier* as supporting the "fair and clear warning" rule. 131 S.Ct. at 2086-87 (Kennedy, J., concurring). In addition, Justice Kennedy's dissent in *Camreta* specifically recognizes the continuing vigor of *Hope:* "Our cases make clear, moreover, that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.' That rule permits clearly established violations to be found when extreme though unheard-of actions violate the Constitution." 131 S.Ct. at 2044 (Kennedy, J., dissenting) (citing *Hope*, 536 U.S. at 741, 122 S.Ct. 2508).

the constitutional right at issue must be clearly established, not just abstractly, but in a "more particularized sense"); *see also Saucier*, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (citations omitted); *Anderson*, 483 U.S. at 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

Indeed, as we have confirmed in our own jurisprudence, "[t]he constitutional right cannot simply be a general prohibition," but rather the contours of the right must be sufficiently clear. *Sample*, 409 F.3d at 698 (citing *Anderson*, 483 U.S. at 640); *Caudill*, 431 F.3d at 912. In *Ashcroft v. al-Kidd*, the Court admonished lower courts "not to define clearly established law at a high level of generality." *al-Kidd*, 131 S. Ct. at 2084. As an example, the Court noted that "[t]he general proposition . . . that an unreasonable search and seizure violates the Fourth Amendment is of little help in determining whether the violative nature of the particular conduct is clearly established." *Id*. The Court noted that the same would be true of "broad historical assertions." *Id*. In *Anderson*, the Court used the Due Process Clause as an example of what would be too high of a level of generality:

> [T]he right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause . . . violates a clearly established right. . . . But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of [qualified immunity].

483 U.S. at 639.

Reading these cases together, the Supreme Court has made clear that the *sine qua non* of the "clearly established" inquiry is "fair warning." *Hope*, 536 U.S. at 741. While it is apparent that courts should not define clearly established law at a high level of generality, it is equally apparent that this does not mean that "a case directly on point" is required. *al-Kidd*, 131 S. Ct. at 2083. In fact, under *Hope*, a requirement that a prior case be "fundamentally" or "materially" similar to the present case would be too rigid an application of the clearly established inquiry. 536 U.S. at 741, 742. Rather, "existing precedent must have placed the statutory or constitutional question beyond debate," *al-Kidd*, 131 S. Ct. at 2083, although the specific

conduct need not have been found unconstitutional. *Hope*, 536 U.S. at 741; *see also Caudill*, 431 F.3d at 912.

Our task, then, is to determine whether the contours of the right at issue have been made sufficiently clear to give a reasonable official fair warning that the conduct at issue was unconstitutional. This test has been applied, both explicitly and implicitly, in our own jurisprudence. *See, e.g.*, *Sample*, 409 F.3d at 698; *Caudill*, 431 F.3d at 912, *Burchett*, 310 F.3d at 942; *Morrison*, 583 F.3d at 401. In applying this test, both pre- and post-*Hope*, we have found that freedom from excessively forceful or unduly tight handcuffing is a clearly established right for purposes of qualified immunity.

*b. Sixth Circuit Handcuffing Precedent*

As early as 1993, we held that it was clearly established law in this circuit in 1991, at the time of the incident at issue, that excessively forceful handcuffing violates the Fourth Amendment prohibition against excessive force. *Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir. 1993); *see also Martin*, 106 F.3d at 1313 (discussing *Walton*). Since then, this Court directly and unequivocally determined, time and time again, that unduly tight or excessively forceful handcuffing is a clearly established violation of the Fourth Amendment. *See, e.g.*, *Martin*, 106 F.3d 1308, 1313 (6th Cir. 1997) (noting that it was clearly established in the Sixth Circuit as early as 1991 that excessively forceful handcuffing was prohibited); *Kostrzewa*, 247 F.3d at 641 (6th Cir. 2001) ("This circuit has held that the right to be free from excessive force, including 'excessively forceful handcuffing,' is a clearly established right for purposes of the qualified immunity analysis."); *Neague v. Cynkar,* 258 F.3d 504, 507 (6th Cir. 2001) (citing *Walton* for the proposition that that the right to be free from 'excessively forceful handcuffing' is a clearly established right for qualified immunity purposes); *Burchett*, 310 F.3d at 944 (6th Cir. 2002) ("The right to be free from 'excessively forceful handcuffing' is a clearly established right for qualified immunity purposes, and applying handcuffs so tightly that the detainee's hands become numb and turn blue certainly raises concerns of excessive force.") (internal citation omitted); *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 173 (6th Cir. 2004) (citing *Burchett*, 310 F.3d at 944, for the proposition that the right to be free from "excessively forceful handcuffing" is a clearly established right for qualified immunity

purposes); *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 902 (6th Cir. 2004) (citing *Walton* for having "articulated a clearly established right to be free from specific types of non-deadly excessive force, such as handcuffing an individual too tightly"); *Lyons*, 417 F.3d at 575 (6th Cir. 2005) (the principle that the Fourth Amendment prohibits unduly tight handcuffing in the course of an arrest was " 'clearly established' under Sixth Circuit case law" at the time of plaintiff's arrest); *Marvin v. City of Taylor*, 509 F.3d 234, 247-48 (6th Cir. 2007) ("Thus, it is clearly established that handcuffing an arrestee in an objectively unreasonable manner is a Fourth Amendment violation."); *Morrison*, 583 F.3d at 401 (6th Cir. 2009) ("The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. This right was 'clearly established' for qualified immunity purposes at the time of Amanda's seizure on October 30, 2002.") (internal citation omitted); *Miller*, 606 F.3d at 252 (6th Cir. 2010) ("The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure.  This right was 'clearly established' for qualified immunity purposes at the time of Miller's arrest.") (internal citations omitted); *see also, e.g.*, *Standifer v. Lacon*, 587 F. App'x 919, 923 (6th Cir. 2014); *Solovy v. Morabito*, 375 F. App'x 521, 527-28 (6th Cir. 2010); *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 514 (6th Cir. 2006); *Grooms v. Dockter*, 76 F.3d 378 (6th Cir. 1996) (table opinion).

The extent of case law in this Circuit suffices to put a reasonable officer on notice that excessively forceful or unduly tight handcuffing is a constitutional violation under the Fourth Amendment.  The cases in this Circuit place it beyond peradventure that such a right exists; thus, the law is sufficiently clear for the purpose of the clearly established prong of the qualified immunity analysis.  These cases define the right that is clearly established not at a high level of generality or on the basis of a broad historical proposition, *see al-Kidd*, 131 S. Ct. at 2084, but rather, in a particularized context: excessively forceful or unduly tight handcuffing, a type of excessive force, is a type of Fourth Amendment violation, which, in turn, is a constitutional violation.  This level of particularity in defining the constitutional right easily meets the standards set out by the Supreme Court, which requires that the contours of a right to be sufficiently clear under preexisting law. *Anderson*, 483 U.S. at 640; *Hope*, 536 U.S. at 739.

Requiring any more particularity than this would contravene the Supreme Court's explicit rulings that neither a "materially similar," "fundamentally similar," or "case directly on point"– let alone a factually identical case – is required, and that the specific acts or conduct at issue need not previously have been found unconstitutional for a right to be clearly established law. *Anderson*, 483 U.S. at 640; *Hope*, 536 at 742-43; *al-Kidd*, 131 S. Ct. at 2083 (finding that "a case directly on point" is not required for a right to be clearly established). Any other result would allow *Hope*'s fear of "rigid, overreliance on factual similarity" in analyzing the "clearly established" prong of the qualified immunity standard to be realized.[4]

In granting summary judgment on the ground of qualified immunity, the district court determined that "[a]t the time of Plaintiff's arrest, a generalized right to be free from unduly tight handcuffing was 'clearly established.'" Despite that determination, the district court then went on to find that the right at issue was not clearly established in this case because "[u]nder the circumstances, a reasonable officer would not have known that he was violating the individual's Fourth Amendment rights" where there was no evidence suggesting Deputy Maiorana did not follow proper handcuffing procedures; Baynes complained only once about the tightness of the handcuffs; Deputy Cleland responded in some manner to the complaint; and the ride to the jail was "only approximately seven miles" which would have taken "less than 20 minutes." The district court relied almost exclusively on this Court's unpublished opinion in *Fettes v. Hendershot*, 375 F. App'x 528, 533-34 (6th Cir. 2010).

It was at this point that the district court erred. Although the court first found the constitutional right at issue clearly established in this Circuit, in its subsequent pursuit of what it called a "more particularized inquiry," it then determined that the law had not been clearly established, essentially because no prior case presented the exact factual circumstances present in this case. The factual nuances the district court noted to distinguish Baynes' case from this Court's extensive precedent on unduly tight handcuffing amount to precisely the kind of rigidity

---

[4]In reaching our result, we point out that other Circuits have made determinations consistent with ours. *See, e.g.*, *Kopec v. Tate*, 361 F.3d 772, 778 (3d. Cir. 2004); *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009); *Blazek v. City of Iowa City*, 761 F.3d 920, 925-26 (8th Cir. 2014); *Thompson v. Lake*, No. 13-15387, 2015 WL 1501760, at *1 (9th Cir. Apr. 3, 2015) (citing *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) and *Meredith v. Erath*, 342 F.3d 1057, 1063 (9th Cir. 2003)); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1209 (10th Cir. 2008).

the Supreme Court foreclosed in *Hope*. *Hope* was unequivocal in mandating that precise factual similarity is not required; indeed, the *Hope* Court struck down the Eleventh Circuit's test requiring "materially similar" precedent for a right to be clearly established, fearing the dangers of "rigid, overreliance on factual similarity" by courts examining this prong of the qualified immunity standard. *Hope*, 536 U.S. at 742.

In this case, under the guise of determining whether the law regarding excessively forceful handcuffing is clearly established, the district court essentially made a determination of whether it believed that Deputy Cleland's behavior was reasonable – in other words, whether the deputy should be *liable* for a claim of unduly tight or excessive handcuffing. But such a determination infringes on the province of the jury and is therefore improper. The trial court had already determined – appropriately so – that Baynes had adduced sufficient evidence to state a claim for excessively forceful handcuffing sufficient to survive a motion for summary judgment. Indeed, Baynes had established already that genuine issues of material fact exist as to whether the deputies acted objectively reasonably. Then, a few pages later, the district court decided that, based on its view of the facts, there was an "absence of . . . egregious, abusive, or malicious conduct" that "support[ed] the reasonableness of the deputy's conduct." Such a determination is inappropriate under a "clearly established" analysis.

Once a plaintiff demonstrates a genuine issue of material fact as to whether there has been a constitutional violation, by making out a claim of excessively forceful handcuffing sufficient to survive summary judgment, weighing the evidence and determining whether an officer should be liable are tasks exclusively for the jury. In this case, however, the district court turned the factual determinations best left to the jury into factors militating in favor of qualified immunity. That is not the role of the district court in analyzing the second prong of a qualified immunity analysis; rather, it is to determine whether the law was clearly established at the time of the allegedly unconstitutional conduct.

As discussed, *supra*, while a right may not be "clearly established" at a "high level of generality" or by broad historical assertions, neither must the specific conduct at issue have been found unconstitutional for a reasonable officer to be on notice that the conduct is unconstitutional. Rather, the *contours* of the right must be sufficiently clear such that a

reasonable officer has fair warning.[5]  *See Anderson*, 483 U.S. at 640; *Hope*, 536 U.S. at 740-42. Such is the case in the Sixth Circuit with respect to the law surrounding excessively forceful or unduly tight handcuffing under the Fourth Amendment.  Because, in the Sixth Circuit, the right to be free from excessively forceful or unduly tight handcuffing under the Fourth Amendment is clearly established law, no more specificity in defining this right is required.

We recognize, however, that the district court's error was based in part on reliance on our unpublished decisions in *Fettes v. Hendershot*, 375 F. App'x 528 (6th Cir. 2010) and *Lee v. City of Norwalk, Ohio*, 529 F. App'x 778 (6th Cir. 2013).  We also note that the case of *O'Malley v. City of Flint*, 652 F.3d 662 (6th Cir. 2011), would seem to disagree with our conclusion here.[6]

We are not inclined to rely on the outcomes of *Fettes*, *Lee*, or *O'Malley*, for several reasons.  First, it is evident that these three recently-decided opinions are outliers in this Circuit, where at least 10 published cases, not to mention additional unpublished cases, have stated unequivocally, for over 20 years, that a right to be free from excessively forceful or unduly tight handcuffing is clearly established law.  *See* discussion, *supra*.  Absent a change in the substantive law or an intervening Supreme Court decision which alters the outcome of those cases, it is inappropriate for a panel in this Circuit to break from earlier, controlling precedent. *See, e.g.*,  *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 507 (6th Cir. 2004) ("Under the law-of-the-circuit doctrine, only the Court sitting en banc may overrule published circuit precedent, absent an intervening Supreme Court decision or a change in the applicable law"); *Smith v. U.S. Postal*

---

[5]Merriam-Webster's Dictionary defines "contour" as "the general form or structure of something."

[6]In *Fettes*, the panel found that "[w]hile a 'generalized right' to be free from unduly tight handcuffing is 'clearly established,' . . . a reasonable officer would not know that the failure to respond to a complaint about tight handcuffs during a ten-minute ride to the police station violates the Constitution."  375 F. App'x at 533.  The panel determined that, in order to find that the law was clearly established, our precedents needed to notify an officer "that any response to a complaint of tight handcuffing other than an immediate one constitutes excessive force."  *Id*.  In *O'Malley*, the panel determined that, although the plaintiff claimed he told the officer that his handcuffs were too tight, he did not ask the officer to loosen them, he did not have an obvious physical injury, and he was handcuffed "for only about two minutes" before a second officer arrived and escorted plaintiff to her vehicle.  The panel then concluded that the officer's failure to loosen the plaintiff's handcuffs did not violate clearly established federal law because "[o]ur precedents fail to notify officers that any response to a complaint of right handcuffing other than an immediate one constitutes excessive force," and in the absence of a physical problem, a reasonable officer would not know that a problem occurred.  *O'Malley*, 652 F.3d at 672 (citing *Fettes*, 375 F. App'x at 533 and *Lyons*, 417 F.3d at 575).  Similarly, in *Lee*, the panel concluded that the law was not clearly established because "no reasonable officer would have known that ignoring Lee's complaints during the short drive to the police station was unlawful" where Lee was handcuffed shortly before and during the 1.5 mile drive to the police station.  The panel in *Lee* cited only to *Fettes* as support for its conclusion.

*Serv.*, 766 F.2d 205, 207 (6th Cir. 1985) ("[W]e are bound to follow *Smith* as controlling Circuit precedent absent a change in the substantive law or an intervening Supreme Court decision."); *Meeks v. Illinois Cent. Gulf R.R.*, 738 F.2d 748, 751 (6th Cir. 1984) ("[A] panel of this court may not overrule a previous panel's decision. Only [an] en banc court may overrule a circuit precedent, absent an intervening Supreme Court decision.").

Further, neither *Fettes* nor *Lee* nor *O'Malley* apply or follow the dictates of *Hope*; indeed, none of the three decisions discuss or cite to the standards set out by *Hope*. As discussed *supra*, no intervening law from the Supreme Court has altered our Circuit's previous holdings to now require such a high degree of factual similarity such that our extensive and long-standing precedent – finding that freedom from excessively forceful handcuffing is a clearly established right under the Fourth Amendment – can be ignored. If anything, the opposite has happened.

For example, *O'Malley* relies on language we used in *Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997), to define the "clearly established" prong of the qualified immunity analysis, citing it for the proposition that courts are required "to examine the asserted right at a relatively high level of specificity" and on a "fact-specific, case-by-case basis." *O'Malley*, 652 F.3d at 668 (citing *Cope*, 128 F.3d at 458-59). Unfortunately, this portion of *Cope* (or, at least, the characterization of it in *O'Malley*) is no longer valid after the Supreme Court's decision in *Hope*, decided seven years after *Cope* was published. As discussed in Part II.A.2.ii.a, *supra*, the *Hope* Court struck down a test from the Eleventh Circuit very similar to that stated in *Cope* as cited by *O'Malley*. To be sure, since its decision in *Hope*, the Supreme Court has reemphasized that a particularized review of the right at issue, as opposed to a review made at a "high level of generality," is necessary; but the standards set out in *Hope* – which states that an official can be on notice that his conduct violates a clearly established right even in "novel factual circumstances" – have not been altered or overturned. *Brosseau* and *al-Kidd* merely set the outer bounds of the "clearly established" inquiry. Indeed, there is no controlling precedent to support a requirement that a prior case involve the same precise facts or otherwise be directly on point in order for a court to find that the law is clearly established in a certain area.

We cannot rely on *Fettes*, *Lee*, and *O'Malley*, decisions that failed to follow the dictates of *Hope* and broke from earlier, controlling precedent of this Circuit, in a manner that was not

necessitated by any intervening change in governing law. We also note that both *Lee* and *Fettes* are unpublished decisions, which are not binding precedent and are unpersuasive. *Longaberger Co. v. Kolt*, 586 F.3d 459, 468 (6th Cir. 2009); *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007). For these reasons, we do not rely on *Fettes*, *Lee*, or *O'Malley* here.

The law is clear in this Circuit regarding the prohibition against excessively forceful handcuffing. Further, Baynes has set forth sufficient evidence to create a genuine issue of material fact that a constitutional violation occurred. For these reasons, the deputies are not entitled to qualified immunity on Baynes' claim. Therefore, we **REVERSE** the district court's grant of summary judgment to Deputy Cleland and to Deputy Maiorana and **REMAND** this case for trial on Baynes' claim of excessive force.

### B.  Deliberate Indifference to a Serious Medical Need

Baynes next challenges the district court's decision to grant summary judgment in favor of Defendants-Appellees on his claim that Defendants-Appellees were deliberately indifferent to his serious medical condition while he was detained in Macomb County jail, thereby depriving him of his rights under the Eighth Amendment. The Court will first discuss Baynes' claims against the individual defendants, Deputies Cleland and Maiorana, followed by a discussion of Baynes' claim against Defendant Macomb County.

### 1.  The Individual Defendants: Deputy Cleland and Deputy Maiorana

Under the Eighth Amendment, prison officials are prohibited from "'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Pretrial detainees are protected analogously under the Due Process Clause of the Fourteenth Amendment. *Id.* In order to establish a Eighth violation for deliberate indifference to serious medical need against a prison official under § 1983, the plaintiff must satisfy an objective and a subjective component. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To satisfy the objective component, Plaintiff must show the existence of a sufficiently serious medical need, meaning he is "incarcerated under conditions posing a substantial risk of

serious harm." *Id*. (citing *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104; *Brown*, 207 F.3d at 867). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore*, 390 F.3d at 897).

The subjective component is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

A prison official acts with deliberate indifference when "'the official knows of and disregards an excessive risk to inmate health or safety.'" *Harrison*, 539 F.3d at 518 (quoting *Farmer*, 511 U.S. at 837). An official "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id*. Although "deliberate indifference entails something more than mere negligence," the Supreme Court has made clear "it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. *See also Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 540 (6th Cir. 2008) (explaining the subjective prong "is meant to prevent the constitutionalization of medical malpractice claims" but that "a plaintiff need not show that the officer acted with the specific intent to harm" (internal quotation marks omitted)). Because government officials do not readily admit the subjective component of this test, it may be "'demonstrat[ed] in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 842); *see also Phillips*, 534 F.3d at 540.

Baynes asserts that Deputies Cleland and Maiorana were deliberately indifferent to his serious medical need because "[e]vidence in this case shows that both individual Defendants and staff of Macomb County Jail denied Plaintiff medication while in custody, despite Plaintiff's request for medical attention." This is the extent of Plaintiff's argument on appeal regarding his claims of deliberate indifference against Defendants Cleland and Maiorana. Despite his fervent statement, however, Baynes has not presented evidence sufficient to demonstrate that there is a genuine issue of material fact as to the subjective component of his deliberate indifference claim as to either Deputy Cleland or Deputy Maiorana; therefore, his claim must fail.

It appears that the only record evidence that possibly could support a claim that Defendants Cleland or Maiorana knew of, and disregarded, an excessive risk to Baynes' health or safety, *Harrison*, 539 F.3d at 518, is Baynes' deposition testimony that he told at least one of the arresting officers that he needed his medication. He stated:

> Q: Who did you tell that you needed your medication?
> A: I don't know who it was.
> Q: Was it a man or woman?
> A: I believe it was a man. And I believe one of the officers was the officer that wouldn't listen to me about anything. I don't know his name. I don't even -- I couldn't even tell you what he looks like. I couldn't tell you. They kept telling me don't worry about it.
> Q: Now, are these the guys that arrested you or is this the guys in the jail?
> A: I think one of them was the person that took me into custody and the other one was whoever the intake officer was.
> Q: So you told the uniformed officer, the sheriff, one of the deputies that arrested you, that you need your medication and he told you don't worry about that; correct?
> A: Yes.
> …
>
> Q: Did you say anything to the officers? I'm sorry. To the deputies.
> A: I told them my --
> Q: Go ahead.
> A: I told them my handcuffs were too tight, and I needed my medication, but which I said first, I don't remember because I was worried about it.

(R. 17-3 at 122-23, 143).

First, we must note that although Baynes claims that the officers "denied" his request for medication, the record is devoid of evidence supporting such a denial. In fact, Baynes presents

no evidence of whether there was a response – verbal or otherwise – from either Defendant Cleland or Maiorana, or what that response was. Further, to the extent that Baynes' complaint is that he was not given medication or other proper medical treatment during his detention in the Macomb County Jail, there are at least two problems with such a claim: first, there is no evidence that either Cleland or Maiorana were with Baynes during that time; second, Baynes testified that, at some point during his detention at the Macomb County Jail, he in fact *was* allowed to take the medication that was found in his pocket during intake. His conclusory statement that the evidence shows he was denied medication by Cleland or Maiorana appears unsupported by the record.

Further, based on the record before us, we cannot say that Baynes has demonstrated that either Defendant Cleland or Defendant Maiorana were aware of facts from which an inference could be drawn of a substantial risk of serious harm to Baynes, nor that either officer in fact drew such an inference. *See Harrison*, 539 F.3d at 518. Plaintiff puts forth no evidence indicating when or where he requested his medication from the officers; nor does he put forth evidence describing what, if any, information he gave the officers about the extent of his medical issues or the potential consequences that may result if he did not have access to his medication. Baynes only presents evidence that he told Defendants Cleland and Maiorana that he "needed [his] medication." Under the circumstances here, evidence that the officers were told that Baynes needed his medication alone is insufficient to create a genuine issue of material fact that the officers were deliberately indifferent to Baynes' serious medical need. There is no evidence that either officer was aware of facts that could lead them to conclude that failing to provide Baynes with the medication he sought would cause a serious risk to his health. Neither is there evidence that either officer in fact drew such a conclusion.

Moreover, Baynes has not put forward circumstantial evidence from which a reasonable factfinder could determine the risk to Baynes' health was so obvious to the officers to allow his claim to withstand summary judgment. *Terrance,* 286 F.3d at 843. Therefore, even if Baynes could satisfy the objective component by showing that his breathing condition qualifies as a serious medical need, he cannot meet the subjective component of his claim as to either

Defendant Cleland or Maiorana. Thus, summary judgment as to both Defendants on Baynes' claim of deliberate indifference to a serious medical need is proper.

## 2. Defendant Macomb County

It is well established that a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may only hold a municipal entity liable under § 1983 for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*." (citing *Monell*, 436 U.S. at 692-94)). Stated otherwise, for a municipal entity to be liable for a violation of § 1983, a plaintiff must show: (1) a deprivation of a constitutional right; and (2) that the municipal entity is responsible for that deprivation. *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 505-06 (6th Cir. 1996) (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 120 (1992)). Moreover:

> [a] local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers. *Id.* Where the identified policy is itself facially lawful, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (quoting *Harris,* 489 U.S. at 388, 109 S.Ct. 1197 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown,* 520 U.S. at 410, 117 S.Ct. 1382. In other words, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious." *Id.* at 412, 117 S.Ct. 1382; *see also Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir.1997).

*Gregory,* 444 F.3d at 752-53.

A plaintiff must show a "direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred *because* of the execution of that policy." *Doe,* 103 F.3d at 508 (internal quotation marks omitted); *see also Fair*

*v. Franklin Cnty., Ohio*, 215 F.3d 1325 (6th Cir. 2000) (table decision) ("*Monell* requires that a plaintiff identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.") (internal quotation marks omitted).

To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*).

In Baynes' complaint, he asserted a § 1983 claim against Macomb County, arguing that the County "developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional rights of persons within the county, which caused the violation of Plaintiff's rights." Baynes specifically alleged that Defendant Macomb County "and its sheriffs' department" implemented the following unconstitutional customs and practices:

a.  Tolerated and encouraged its police officer to harass its citizens by performing warrantless and unconstitutional searches/seizures on innocent citizens without any legal cause or excuse;

b.  Failed to adequately screen, hire, train and employ capable and professional officers;

c.  Knew or should have known of previous harassing and abusive actions of its officers and failed to adequately sanction said officers;

d.  Failed to adequately supervise, monitor and train its officers, including the officers involved in this instant matter, thereby failing to adequately discourage further constitutional violations on the part of its police officers;

e.  Failed to implement appropriate in-service training or re-training of deputies who were known to engage in police misconduct;

f.  Failed to adequately and properly investigate complaints of police misconduct and acts of misconduct were instead tolerated by the County of Macomb;

g.  Deliberately destroying and/or failing to retain evidence regarding this incident.

The district court granted summary judgment to Defendant Macomb County on this claim, finding that, in his response brief, Plaintiff referred only "vaguely" to the County's failure

to investigate constitutional violations and to discipline offending officers, but that he did not "refer to any specific evidence with respect to this County or these officers." *Baynes*, No. 12-cv-14289, 2014 WL 4373755 at *8. The district court found it persuasive that Baynes did not "cite to any prior instances of misconduct or allege that the County has ignored a history of abuse," and thus held that Plaintiff's allegations were "insufficient to survive a motion to dismiss . . . much less Defendants' motion for summary judgment." *Id.*

On appeal, Baynes now argues that Macomb County was deliberately indifferent to Plaintiff's medical concerns while detained because the County "acquiesced to the ignorance of" the Defendant-deputies and failed to investigate or discipline the Defendant-deputies, thereby acquiescing to the deputies' wrongful actions. Baynes also asserts that the County should be held liable because "jail staff" denied medications to inmates and knowingly placed inmates "in harms' way" by exposing the inmates to toxic mold. From these arguments, it appears that Baynes attempts to claim that Macomb County maintained a policy of inadequate training or supervision and/or a custom of tolerance and acquiescence to federal violations.[7] *See Thomas*, 398 F.3d at 429. A claim based on either ground must fail.

As discussed in Part II.B.1, *supra*, Baynes failed to present facts upon which a reasonable juror could conclude that the individual defendants' conduct constituted deliberate indifference to a serious medical need under the Eighth Amendment. Without an underlying unconstitutional act, Baynes' claim against the County under § 1983 must also fail. *See Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 311-12 (6th Cir. 2014) (affirming the trial court's grant of summary judgment to the county-defendant where plaintiff failed to present facts upon which a reasonable juror could conclude the inmate's Eighth and Fourteenth Amendment rights to adequate medical care were violated, noting that "[a]bsent an underlying constitutional violation, [plaintiff's] claim against the county under § 1983 must also fail.") (internal citations omitted); *see also, e.g., Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) ("There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act.").

---

[7]Baynes does not appear to present claims of or arguments related to the municipality's legislative enactments or official policies, or actions taken by officials with final decision-making authority in either his Complaint or in his briefing on appeal.

Even if there were an underlying constitutional violation, however, Baynes' claim would fail because he fails to show a genuine issue of material fact as to whether there was a "direct causal link" between the County's action and any alleged deprivation of federal rights, which is required to surpass summary judgment. *See Perez v. Oakland Cnty.*, 466 F.3d 416, 432 (6th Cir. 2006) (holding that plaintiff's claim of deliberate indifference by a municipality failed in part because he failed to show a genuine question as to whether there was a direct causal link between the municipality's action and the deprivation of federal rights).

## III.  CONCLUSION

For these reasons, we hold that Defendants Cleland and Maiorana are not entitled to qualified immunity for Baynes' claim of excessive force.  Accordingly, the district court's judgment on Baynes' excessive force claim is hereby **REVERSED** and **REMANDED** to proceed to trial.  We further hold that Baynes' claim of deliberate indifference to a serious medical need is insufficient to withstand summary judgment, and hereby **AFFIRM** the district court's judgment on that claim.